## UTLEY AND ANOTHER *vs.* SMITH AND OTHERS.

Where an insolvent debtor, who was ignorant of his insolvency, made a *bona fide* mortgage of real and personal property, not with the intention of closing his business, but rather with a view to continue and extend it; it was held, that this was not a conveyance made "with a view to insolvency," within the meaning of the statute, passed in 1853, entitled "an act for the relief of insolvent debtors, and for the more equal distribution of their effects among their creditors," and therefore was not in violation of said act.

The condition, annexed to a mortgage deed, was as follows: "Whereas, the said S., at my request, and for my sole accommodation, has agreed to endorse my own negotiable paper and business paper, received by me from others, and afterward by me negotiated, to be made within two years from the date hereof, and also to become my security on other paper from time to time, the whole not exceeding in amount the sum of sixteen thousand dollars, at any given time within said two years, and all to be discounted by, or received by, and payable to" [six enumerated banks] "and at said banks, or any one or more of them, or otherwise; and has also endorsed for me and become my security on sundry promissory notes, bills of exchange, and other negotiable paper, which has not yet come to maturity, a part whereof is due to or payable at one or more of the said banks, and some part thereof in other places not remembered, the whole amounting to about sixteen thousand dollars. "Now, if I, or my heirs, &c., shall well and truly pay all and singular the sums of money which have been, or shall hereafter be specified to be paid in all and singular, the negotiable and other paper, as aforesaid endorsed by him, or signed by him, as my surety as aforesaid, and shall well and truly indemnify and save harmless the said S., his heirs, executors, administrators and assigns, from all cost, charges, losses, damages and interests whatsoever, which he, or they, or any one or more of them shall be compelled to suffer, sustain and pay directly or indirectly, for or by reason of endorsing, or otherwise becoming my security, on any such negotiable paper and other obligations, and all and singular the renewals thereof from time to time, until the indebtedness thereby created shall have been fully discharged and paid, then the foregoing deed shall be void, otherwise effectual and valid, it being understood that the said S. may, at any time during said two years, after notice of at least three months, decline further to endorse, or to become my surety as aforesaid." Held, that such deed was not invalid for uncertainty, as against the subsequent assignee of the mortgagor.

Held also, that the following condition, annexed to a mortgage deed, did not render it void as against the same assignee. "The condition of this deed is such, that whereas the said grantee has, at the request of the grantor, and for the sole accommodation of whom the said grantor has been, until this date, the principal partner, endorsed certain promissory notes and other negotiable

paper, payable at the Central bank, for value received, and certain other promissory notes, and other negotiable paper, all of which have been discounted at the several banks, and other places of discount in this city, all for value received, and amounting in all to fifteen thousand dollars; now, therefore, if the said grantor shall well and truly pay, or cause to be paid, all the notes and negotiable paper so endorsed by the said grantee, and shall indemnify and in all respects save harmless the said grantee against all loss, cost, interest or damage whatever, by reason of any such note or notes or negotiable paper, or upon any note or notes or negotiable paper made or endorsed by him, by way of renewal or substitution, for such notes or negotiable paper, or any of them, then this deed shall be void."

Where, on the hearing of a bill in chancery, praying for an account between partners, it appeared, that, after one of the members of the firm had made a voluntary assignment of his estate to a trustee, for the benefit of his creditors, another member of said firm paid, out of the partnership funds, sundry liabilities and endorsements of the firm, and charged in his individual account, the sum so paid, and also charged for his time and services in collecting and paying out said money but did not further intermeddle with the partnership property, except to preserve it from injury; it was held, that such charges were properly made, and should be allowed.

Where the owner of personal property mortgaged the same, and subsequently became a member of a copartnership, to which the mortgagee conveyed such property, but which remained in the mortgagor's possession, until its conveyance by the mortgagee, when it went into the possession of said copartnership; it was held, in the absence of actual fraud, that such mortgage was not fraudulent, as against the subsequent assignee of the mortgagor, on the ground that the mortgagee had retained possession of the property.

THIS was a bill in equity, brought to the term of the superior court for the county of Middlesex, holden in March, 1855, by Origen Utley and Charles Hubbard, as trustees of the estate assigned for the benefit of his creditors, by Andrew Coe, an insolvent debtor, against Henry D. Smith, Alfred M. Bailey, William R. Smith and others.

The prayer of the bill was, that certain mortgage deeds, given by said Coe to said Henry D. Smith, might be set aside, and the title to the mortgaged property vested in the plaintiffs, and for an injunction, and other relief against the defendants.

Upon the cross-bills of William R. Smith, and of Isaac Roberts trustee of the estate assigned for the benefit of his creditors, by said Bailey, and the answers of the other defend-

ants, the cause was referred to a committee, who found the facts therein, and the case was thereupon reserved for the advice of this court.

The prayer of said Roberts' cross-bill was, that a quitclaim deed to Coe, of Bailey's interest in the estate of A. M. Bailey & Co., which was embraced in one of said mortgages from Coe to Henry D. Smith, might be set aside, and the title to the same vested in said trustee.

Said William R. Smith, in his cross-bill, prayed that an agreement to form a copartnership between him and said Henry D. and said Coe, might be annulled, and an account taken of the transactions connected with, and property furnished for, such copartnership.

The material facts, as found by the committee, are the following.

On the 5th day of December, 1854, Coe was, and for more than a year before, had been carrying on, at said Middletown, the business of making bone dust, animal charcoal, and superphosphate of lime, and in connection with one A. M. Bailey, under the name of A. M. Bailey and company, had also, during the same time, been carrying on the business of making bone buttons; the latter business being carried on at a separate mill, which, with the land and water privilege connected therewith, was owned by said A. M. Bailey & Co.; and the former business at a mill owned, with the land connected therewith, by said Coe individually.

On said 5th day of December, Coe executed and delivered to Henry D. Smith, a mortgage of said mill, owned by him individually, and the real estate pertaining thereto, and all the personal property, in and upon the same, to secure said Smith for sundry endorsements and acceptances, previously made by said Smith for his accommodation, and then outstanding, and for like endorsements and acceptances, afterwards to be made by said Smith for him, to which deed the following condition was annexed :

" But on condition that whereas the said Henry D. Smith,

at my request and for my sole accommodation, has agreed to endorse my own negotiable paper, and business paper, received by me from others, and afterward by me negotiated, to be made within two years from the date hereof, and also to become my security on other paper from time to time, the whole not exceeding in amount the sum of sixteen thousand dollars at any given time within said two years, and all to be discounted by, or received by, and payable to the Middletown Bank, the Middlesex County Bank, the Central Bank, the Middletown Savings Bank, the Middlesex Savings Bank and Building Association, the Mutual Savings Bank and Building Association of Middletown, and payable at said banks, or any one or more of them, or otherwise; and the said Henry D. Smith has also endorsed for me, and become my security, on sundry promissory notes, bills of exchange, and other negotiable paper, which has not yet come to maturity, a part whereof is due to or payable at one or more of the said banks, and some part thereof in other places not remembered, the whole amounting to about sixteen thousand dollars.

"Now, if I or my heirs, &c., shall well and truly pay, all and singular, the sums of money which have been, or shall hereafter be specified to be paid in, all and singular, the negotiable and other paper, as aforesaid endorsed by him, or signed by him, as my surety as aforesaid, and shall well and truly indemnify and save harmless the said Smith, his heirs executors, administrators and assigns, from all cost, charges losses, damages and interests whatsoever, which he, or they, or any one or more of them shall be compelled to suffer, sustain and pay, directly or indirectly, for or by reason of endorsing, or otherwise becoming my security, on any such negotiable paper and other obligations, and all and singular the renewals thereof from time to time, until the indebtedness thereby created shall have been fully discharged and paid, then the foregoing deed shall be void, otherwise effectual and valid, it being understood that the said Smith may at any

time during said two years, after notice of at least three months, decline further to endorse or to become my surety as aforesaid, as by said deed, ready in court to be shown, will appear."

Said Coe, by the consent and permission of Henry D. Smith, remained in the possession of the property, personal as well as real, described in said mortgage, using and treating it, in all respects, as his own, from the execution and delivery of said deed of mortgage, until the 13th day of December, 1854, when it went into the hands of Smith, Coe & Co., a partnership by that name then formed as hereinafter mentioned. But such possession of said property was not permitted by said Smith for the purpose of concealing the existence of said mortgage, or the transfer of said property, or any part thereof.

Simultaneously with the execution of said mortgage, said Smith endorsed negotiable paper of the description mentioned in the condition of said mortgage, for the accommodation of the said Coe, to the amount of two hundred and twenty-five dollars; he was at the same time bound by endorsements and acceptances, previously made for the said Coe's benefit, in the further sum of about forty-two thousand dollars, for which he held partial security of the value, as was then supposed, of eleven thousand five hundred dollars; and afterward, he assumed other liabilities, as endorser, or acceptor, for said Coe, to the amount of about twenty-six hundred dollars; all which endorsements and acceptances were upon paper of the description mentioned in the condition of said mortgage. But said mortgage was designed by the parties thereto, to be a security for the sum of sixteen thousand dollars only.

On said day, said Smith was liable, by endorsements or otherwise, upon paper drawn for the benefit of said A. M. Bailey & Co., to the amount of about twenty-two thousand dollars, and between that time and the 13th day of December, 1854, became liable for them in the same manner for the

further sum of about twenty-four hundred dollars. Said firm of A. M. Bailey & Co. were then, and for some time previously had been, the owners of a certain parcel of land situated in Middletown, and were also the owners of certain machinery and other personal property in said buildings and on the premises, all which said personal property was of the value of about          dollars. On said 5th day of December, a mortgage of said property was prepared by said Smith, for said Coe and A. M. Bailey to execute, and deliver to him, to secure him against his said liabilities for the said firm of A. M. Bailey & Co., but the same was not executed at that time, as the said Smith intended and expected it would be, in consequence of some difficulty in procuring the signature and acknowledgment of said A. M. Bailey thereto ; and the execution of the same was therefore postponed until such time as the signature and acknowledgment of said Bailey could be obtained ; two or three days afterward, it was proposed between said Coe and Smith, to form a copartnership for the purpose of carrying on the business in which said Coe and A. M. Bailey & Co. were then engaged, and to procure as a third partner, said William R. Smith; and said Henry D. Smith soon afterward spoke to said William R. Smith on the subject, and on the 12th day of December, 1854, said William R. Smith, Henry D. Smith and Andrew Coe, met at the office of said Henry D. Smith, for the purpose of conferring upon the matter; at that time said Coe was indebted to said William R. Smith, in the sum of six thousand dollars, and said William R. Smith was bound, by endorsement or otherwise, for said Coe, in the further sum of about seven thousand dollars, for all of which, except thirteen hundred dollars, he held notes, mostly endorsed by the said Henry D. Smith, as collateral security. The note of thirteen hundred dollars, for which he held no security, was endorsed by him, at the request of said Coe, for the purpose of taking up an equal amount of other notes, which were soon to fall due, and was fraudulently used by said Coe for another purpose ;

and said William R. Smith was compelled to pay the notes so intended by him to be taken up by said Coe. This fraudulent conduct on the part of said Coe became known to said William R. Smith, about the time of said meeting, viz., on or about the 9th day of December; and he was anxious to obtain security for the payment of said note. After conferring with said Henry D. Smith and Andrew Coe, in relation to the several matters connected with the formation of said copartnership, said William R. Smith became satisfied that the business in which said Coe and A. M. Bailey & Co. were engaged, was very profitable, and that, by becoming a member of said copartnership, he should obtain security for the said note of thirteen hundred dollars, and additional security for his other liabilities for said Coe, and he therefore agreed to enter into said copartnership with the said Andrew Coe and Henry D. Smith, under the name and firm of " Smith, Coe & Co."

At the time of said conference between William R. Smith, Henry D. Smith and Coe, strong representations were made by Coe and Henry D. Smith, to William R. Smith, in relation to the probable profits of the business of the proposed copartnership; but said representations were made in good faith, with no intention to deceive William R. Smith, and they were mainly as to the opinions and estimates of Henry D. Smith and Coe, in regard to the said business. But said estimates being too favorable, William R. Smith was misled with regard to the same.

Coe and Henry D. Smith neglected to inform William R. Smith, at said conferences, of the extent of their indebtedness and liabilities, but there was no intention on their part to deceive him in respect to the same, although, if he had been possessed of full information on the subject, he would not have consented to become a member of said copartnership.

After William R. Smith, Henry D. Smith and Coe had concluded to enter into said copartnership, it was, on the

same day, arranged between them, that Coe should procure a quitclaim from Bailey, of all his right and interest in the said property of A. M. Bailey & Co.; that Coe should thereupon mortgage the same property to Henry D. Smith, in the same manner as they intended and expected it would have been done, on the 5th day of December, by said Coe and A. M. Bailey jointly; said property, together with the property contained in the mortgage of December 5th, should then be delivered to the said copartnership of Smith, Coe & Co.; the real estate, upon a rent of three thousand dollars per annum, to be allowed to Coe, and the stock on hand to be worked up by Smith, Coe & Co.; and that the entire business of the said Coe, and of the firm of A. M. Bailey & Co., with all the personal property upon, or connected with, the mortgaged premises, should at once pass to, and vest in, said firm of Smith, Coe & Co.

Afterward, on the 13th day of December, 1854, the articles of said copartnership were agreed upon, and, on the 18th day of December, 1854, were executed by the several partners. By the terms of said articles, the copartnership was to continue for five years, and the business was to be carried on upon the premises, mortgaged to Henry D. Smith, and possession was to be given of the same by Coe, for that purpose, immediately, and for the use of which he was to be allowed three thousand dollars per annum. And said rent, and all the profits and emoluments of the business, were to be held by said Henry D. and William R., as security for any and all liabilities which they had assumed, or might assume, for Coe.

The books and papers were to be kept by Henry D. Smith, and he alone was to use the copartnership name, except in case of his inability to act, when it might be used by William R. Smith only.

It was, however, the expectation of all the partners, that all the profits of the business should be applied to the payment of all debts of said Coe, and of the said firm of A. M. Bailey & Co., as they should fall due, for the purpose of pre-

venting interruptions in their business, by the creditors of said Coe, and of the firm of A. M. Bailey & Co., it being intended that said firm of Smith, Coe & Co. should charge all payments thus made to said Coe, and thus, in two or three years, render themselves his sole creditors.

On said 13th day of December, Bailey, at the request of Coe, agreed to quitclaim to him all his right, and interest in, and to said property of the firm of A. M. Bailey & Co., in consideration that Coe would bind himself to liquidate a debt at the Mutual Savings Bank and Building Association, of Middletown, and certain other debts outstanding against the said Bailey, not exceeding, in all, the sum of fifteen hundred and sixty-three dollars, fifty-one cents, and would also release said Bailey from all responsibility or liability on account of, or contracted by, said firm of A. M. Bailey & Co., and that the fulfilment of said obligation and agreement should be guaranteed by the said Henry D. Smith and William R. Smith. Afterward, on the same day, said Coe executed an instrument in writing, in pursuance of said agreement, which was guaranteed by said Henry D. and William R., and on the same day, Coe delivered said instrument to Bailey. And thereupon Bailey executed and delivered to Coe, a deed, of the date last aforesaid, by which he released and quitclaimed to Coe, all his interest in the real and personal property of A. M. Bailey & Co.

Afterward, on the same day, said Coe, by his deed of that date, duly executed, mortgaged said real and personal property, including the interest therein quitclaimed to him by said Bailey, as aforesaid, to said Henry D. Smith ; and on the same day, said deed was duly recorded in the records of the town of Middletown.

To this deed was annexed the following condition : " The condition of this deed is such, that whereas the said grantee has, at the request of the grantor, and for the sole accommodation of A. M. Bailey & Company, of whom the said grantor has been, until this date, the principal partner, endorsed certain promissory notes and other negotiable paper, payable at

the Central Bank, for value received, and certain other promissory notes, and other negotiable paper, all of which have been discounted at the several banks, and other places of discount in this city, all for value received, and amounting in all to fifteen thousand dollars ; now, therefore, if the said grantor shall well and truly pay, or cause to be paid, all the notes and negotiable paper so endorsed by the said grantee, and shall indemnify and in all respects save harmless the said grantee against all loss, cost, interest or damage whatever, by reason of any such note or notes or negotiable paper, or upon any note, or notes, or negotiable paper, made or endorsed by him, by way of renewal or substitution, for such notes or negotiable paper, or any of them, then this deed shall be void, otherwise valid and in force, as by said deed, ready in court to be produced, will appear."

Afterward, on the same day, Coe mortgaged the residue of his real estate, (except one lot, which was encumbered for nearly or quite its value,) to said William R. Smith, for security of debts and liabilities, to the amount of eleven thousand four hundred and sixteen dollars, and thirty-five cents.

The conveyances so made, on said 13th day of December, embraced the whole of the visible property of Coe, and of the firm of A. M. Bailey & Co. which was liable to be taken by attachment, except the last mentioned lot of land, and the property contained in said mortgage of the 5th of December.

On said 13th day of December, 1854, said Coe, Henry D. Smith and William R. Smith, commenced business under their said partnership name, and took possession of all the property contained in both said mortgage deeds to Henry D. Smith, and on the 18th day of December, 1854, executed their said articles of copartnership, as before mentioned. They employed workmen, contracted debts, and continued to transact business together, under their said articles of copartnership, until the property in their possession was attached at the suit of creditors of Coe, (which was on the 4th day of

January, 1855,) and then the said copartnership, at the request of William R. Smith, was dissolved, by the mutual consent of the partners, and public notice was given of the dissolution; the property so attached was held by the officer who served the attachments, until the 20th day of January, 1855, when the same was delivered by him to the plaintiffs, as trustees of Coe; and said trustees inventoried said property, as the property of said Coe.

When said mortgages were given, Henry D. Smith had been the principal accommodation endorser for said Coe and A. M. Bailey & Co., for more than eight months; he became so solely upon the faith of an undertaking and promise, on their part, to keep him at all times indemnified and secured. Some time in the month of July, 1854, Coe and A. M. Bailey & Co. agreed, with Henry D. Smith, by parol, to give him a mortgage or mortgages of the property described in said deeds of the 5th and 13th of December, to indemnify him against the liabilities which he had then incurred, and those which he might thereafter incur, as their endorser, acceptor or surety.

All the liabilities subsequently assumed by him for Coe and A. M. Bailey & Co., were assumed in consideration of said agreement; and it was to carry out said agreement in good faith, that both of the said mortgages were given and received. Henry D. Smith was holden as endorser, acceptor, or surety, for Coe and the firm of A. M. Bailey & Co., to the amount of about seventy thousand dollars; the same has been allowed against his estate by the commissioners thereon; which sum is greater than the value of his own property and the property mortgaged to him by Coe.

On the 5th day of December, 1854, when the first of said mortgages was given, and on the 13th of the same month, when the other was executed, said Coe was hopelessly insolvent, and said firm of A. M. Bailey & Co. was also insolvent. But such was the manner in which their books had been kept and their business conducted, that neither

said Coe nor said Bailey was aware of his insolvency, or of the insolvency of each other, or of the said firm of A. M. Bailey & Co.

When said mortgages were given, Henry D. Smith, also, was insolvent. But his insolvency was occasioned solely by his liabilities aforesaid, for said Andrew Coe and A. M. Bailey & Co., and he had no actual knowledge that he was in that condition when said mortgages or either of them were made; nor had he any knowledge of the insolvency of said Coe, or of the firm of A. M. Bailey & Co.

Said quitclaim deed, given to enable said Coe to mortgage the property therein described to Henry D. Smith, for the security of his liabilities for A. M. Bailey & Co., and to put said property, subject to said mortgage, into said partnership of Smith, Coe & Co., divested of Bailey's interest therein; the instrument in writing, executed by Coe and delivered to Bailey, as aforesaid, and the guaranty of the fulfilment thereof by Henry D. Smith and William R. Smith, were the only considerations received by Bailey for said quitclaim deed, and constituted his sole inducement to execute the same; in receiving said instrument, Bailey supposed that Coe was thereby bound to pay all the debts and liabilities of the firm of A. M. Bailey & Co., as well as said sum of fifteen hundred and sixty-three dollars, fifty one cents, therein mentioned, and that Henry D. Smith and William R. Smith guaranteed his fulfilment of the obligation. Henry D. Smith and William R. Smith and Coe, however, understood that, in executing said guaranty, Henry D. Smith and William R. Smith were assuming no further obligation than that of paying said sum of fifteen hundred and sixty-three dollars, fifty-one cents, in case of the failure of Coe to pay the same, according to the terms of said instrument, and had no idea of making themselves liable for the payment of said debts of A. M. Bailey & Co. Said debts were not mentioned to Henry D. Smith and William R. Smith, at the time they

agreed to execute said guaranty, nor had they any knowledge in regard to their amount.

Bailey also was ignorant of the extent to which A. M. Bailey & Co. had become liable; he supposed, however, that the whole amount did not exceed nine thousand dollars, whereas, in fact, it exceeded the sum of twenty-seven thousand dollars. There was, however, no misrepresentation or concealment by Bailey, on the subject, nor was there any conversation between the parties, at the time, as to the effect of the said instrument; but the impressions of the parties, in relation to the meaning of the instrument, were derived solely from reading the same.

Said quitclaim deed was procured in good faith, and not by the fraudulent misrepresentations or concealments of Coe.

Since the execution and delivery of said quitclaim deed, Coe has been ready and willing to execute and deliver, and, on the hearing before the committee, executed and offered to deliver to the said Alfred M. Bailey, a release, " from all responsibility or liability, on account of or contracted by the firm of A. M. Bailey & Co."

But Coe in no other way discharged any of the obligations contained in his said agreement with A. M. Bailey, of the 13th of December, nor was the same fulfilled by Henry D. Smith or William R. Smith. And said Henry D. Smith and Andrew Coe were unable, by reason of their insolvency, to fulfil the same. William R. Smith, however, is able to pay said sum of fifteen hundred and sixty-three dollars, fifty-one cents, although, if he should be adjudged liable under his said guaranty to A. M. Bailey, to pay the debts of the firm of A. M. Bailey & Co., he would probably be rendered insolvent thereby.

When said partnership of Smith, Coe & Co. was formed, Coe and A. M. Bailey & Co. were much embarrassed in their business, and had, for a considerable period prior thereto, paid exorbitant rates of interest for money; but Coe hoped,

that, by forming said copartnership, he should relieve himself from embarrassments, as well as from the payment of more than the legal rates of interest for the use of money, and in two or three years pay off all his debts ; and said Henry D. Smith and William R. Smith expected, in entering into said partnership, to realize large profits from the business in which the partnership was to engage, and thus to insure the payment of the debts due them from said Coe, and the extinguishment of the liabilities which they had incurred for his accommodation and for the accommodation of A. M. Bailey & Co.; and these were the only motives which led to the formation of said copartnership. Said Henry D. Smith and William R. Smith, at the time they became members of said partnership, knew that the affairs of Coe were somewhat embarrassed, but were in utter ignorance of his insolvency, and had no knowledge of the extent of the liabilities outstanding against him.

The only property, which went into said partnership, was that which was embraced in said mortgages to Henry D. Smith, or property purchased with the avails thereof, after it was manufactured, and a quantity of wood, of the value of two hundred eighty-four dollars, ninety-four cents, which was put into said partnership by said Coe.

After the dissolution of said copartnership, neither of said partners intermeddled with any of the property which was put into the same, at the time of its formation, except William R. Smith, and he did so no further than was necessary to preserve the same from injury, and to pay therewith certain debts, which were fairly incurred by said copartnership, and for which he honestly supposed that said property was lawfully holden.

On the 18th day of January, 1855, Coe and Henry D. Smith, severally made assignments of all their property, for the benefit of their creditors, in accordance with the provisions of the statute of 1853, for the relief of insolvent debtors, &c.

Claims were allowed, by the commissioners on the estate of Coe, in favor of his creditors, to the amount of about one hundred and twenty thousand dollars; and by the commissioners on the estate of A. M. Bailey, in favor of his creditors, and the creditors of A. M. Bailey & Co., to the amount of about twenty-seven thousand dollars.

The committee also took an account of the moneys received and paid by said William R. Smith, after the dissolution of the copartnership of Smith, Coe & Co., in respect to the business thereof, and found that he received, on account of said firm, fifty-six hundred and forty dollars, seven cents, and paid sundry sums, amounting to twenty-nine hundred and three dollars, twenty-two cents, to the allowance of which account no objection was made by either of the parties. The plaintiffs objected, however, to the allowance of the following items, charged by said Smith in his account: sundry endorsements and liabilities of said firm, paid by him, amounting to twenty-two hundred and seventy-eight dollars, forty cents, and outstanding claims against said copartnership, for property purchased and appropriated to the use thereof, after it commenced business, to the amount of one hundred and fifty-eight dollars, four cents. Said Smith also charged, for his time and services, in collecting and paying out the money specified in his account, four hundred dollars.

*Dutton*, for the plaintiffs.

1. The great object of the statute of 1853, was to allow no preferences to be given, by insolvent debtors, in cases of actual insolvency; and the seventh section of this act was intended to embrace all the instances in which a person, actually insolvent, could give a valid security.

2. The expression, " with a view to insolvency," is to be construed literally, and so as to carry into effect the object of the statute. Any security, therefore, given or required for

past indebtedness, on the ground of the embarrassed situation of the grantor, comes within it.

3. As Coe was deeply and hopelessly insolvent, it will be admitted that if he had been aware of his situation, he could not have given the mortgage in question, without intending a preference. But every man is presumed to know, what it is his duty to know, and especially to be acquainted with his own affairs.

To allow mortgages to stand on the ground that the mortgageor was unacquainted with his own situation, would be to enable a reckless, lawless man to do what a cautious, careful man, could not do. This, moreover, would give the law the effect of preventing attaching creditors from taking security, but enabling the debtor to give it.

4. The articles of copartnership, entered into, December 13, 1854, furnish clear evidence that the debts of the grantees were to be preferred. The deeds embraced substantially all Coe's property, and there was not half enough to secure the grantees. They must have known that there was a large amount of other indebtedness.

5. No exclusive possession of the personal property was ever given to the mortgagees. By the partnership, Coe was not only to have the possession of the property, but was to have an interest in the property.

The possession of H. D. Smith and W. R. Smith, was only as partners of Coe. It has been held, repeatedly, that the joint possession of the vendor has the same effect as a sole possession, to make a sale void as to creditors. The trustees, representing the creditors, have a right to the personal property, at all events. The attaching creditors could clearly have held this property, had it not been for the assignment. It would be strange indeed, if the attaching creditors lose it, and the creditors at large do not obtain it. *Osborne* v. *Tuller*, 14 Conn. R., 529. 2 Kent, 518. 1 Esp. Rep., 205. 1 Camp., 333.

6. The conditions of the mortgages are too indefinite to come within even the decisions in this state. The previous parol agreement, to give the mortgages, can make no difference. It will not enable Coe to give a preference, when the mortgages were given. Besides, the agreement was not specific. No particular advancements were mentioned. The liabilities, finally secured, were. not in contemplation when the agreement was made.

7. The items, objected to in W. R. Smith's account, can not be allowed. These payments were all made long after the assignment by Coe, and consequently all the title to the property vested in the plaintiff. W. R. Smith could not pay Coe's obligations out of this fund. Nor could he discharge, out of this fund, the liabilities of Smith, Coe & Co., which had not benefited the fund.

8. Equity requires that the whole property should be restored to its original condition. It has come into its present situation through a mutual mistake of facts, and a misapprehension of legal instruments, so far as Bailey is concerned.

*Welles* and *Carter*, for H. D. Smith.

1. The finding of the committee repels the inference that the mortgages to Henry D. Smith, of December 5th and 13th, were made with a view to insolvency, as charged in the bill of the plaintiffs.

Neither party contemplated a suspension of business, but a vigorous prosecution of it. *Jones* v. *Howland*, 8 Met., 379. *In re* Pearce, 6 Law Rep., 261. The expressions, " In contemplation of bankruptcy," and, " in view of insolvency," mean the same thing.

These mortgages are to be treated as executed at the time of, and with reference to, the endorsements. The expression, " when such sale, loan, endorsement, or guarantee, is made at the time, when such security is taken," does not mean at the precise instant, a mutual delivery of instruments, contempo-

raneously, but that the endorser does not rely on the personal responsibility of the drawer of the note, but has acted with reference to, and in expectation of good security upon a particular property, which is designated in and by an agreement. The delay of the drawer, in such case, to execute the mortgage within a reasonable time, does not prejudice the endorser.

2. That the mortgages in question were made in pursuance of a previous agreement, that the mortgagee, H. D. Smith, should be kept fully secured on his endorsements, and that those endorsements were made, relying on the faith of this agreement, and that mortgages of this particular property should be made for such security, relieves the case of any difficulty, on the ground of an intention to prefer creditors, in view of insolvency. The agreement to secure the endorsements, and the mortgages, are all obviously one transaction. *Mix* v. *Cowles*, 20 Conn. R., 426.

The facts found disclose a glaring case for the interposition of a court of equity, to compel a specific performance of that contract by Coe and Bailey. 2 Sw. Dig., 30. 1 Mad., 301. 3 Ves., 38. 2 Sto. Eq., 735.

The endorsements, by Henry D. Smith, were made solely upon the faith of an undertaking to keep him at all times indemnified and secured, and to execute to him mortgage deeds, of the precise property described in these mortgages; all these liabilities were assumed by him, in consideration of this agreement; equity would therefore compel Coe and Bailey to give mortgages. The court can not set aside mortgages, which have been executed in good faith, in pursuance of this agreement, and which the court must have enforced. 3 Har., 185.

Bailey was bound, by that contract, as much as Coe, and ought to have joined Coe in executing the deed to H. D. Smith.

It therefore becomes unimportant, whether Bailey executes a quitclaim to Coe, and Coe mortgages to Smith, or whether

Bailey joins with Coe in the mortgage to Smith; the effect is the same—security according to the contract.

If the quitclaim deed to Coe is set aside, the court will hold Bailey bound to secure Smith on this property, and will so far sustain that deed as to decree the title to be in H. D. Smith, to accomplish that object.

We have no objection, so far as this question is concerned, that the quitclaim deed, from Bailey to Coe, should be set aside as to all other purposes.

From this view it is obvious, that the formation of the partnership was a transaction, entirely distinct from the security promised and ultimately given to H. D. Smith.

The object of the mortgage was to secure H. D. Smith in good faith, for endorsing. The object of the partnership was to enter into a profitable business, to pay all the debts of Coe, to avoid interruption, and to pay themselves. The works were in good order, a large stock of unwrought mate-. rials on hand, and it was the expectation that a profitable and successful business would be carried on.

3. The fact that the personal property, described in the mortgage of December 5, was allowed to remain in Coe's hands, can have no bearing on the case. It is found that there was no intention of concealment, or any improper motive. The mortgage deeds were recorded. It is obvious there were no persons who were affected by such continuance of possession in Coe, as attaching creditors, or purchasers; and the transfer was good against Coe and Bailey. The plaintiffs, who are the assignees of Coe, can have no other interest than Coe had at the time of the assignment.

4. The mortgages are not void for uncertainty, or want of particularity. They are more particular in their description of the claims to be secured, than many of the adjudged cases. They disclose the nature of the debts, or liabilities, to be secured; they state truly that they are an indemnity against contingent liabilities. *Merrils* v. *Swift*, 18 Conn. R., 257. *Bacon* v. *Rown*, 19 Conn. R., 27.

Utley and another *v.* Smith and others.

5. If the mortgage deeds should, for any reason, be held inoperative, there still arises, on the whole transaction, the equitable obligation on the part of Coe and Bailey, to indemnify and secure Smith for his endorsements. That obligation the court would enforce as against Coe and Bailey, by compelling a specific performance. That equity attaches to the property, agreed to be mortgaged to Smith, in the hands of the assignees of Coe and Bailey.

The pleadings, and the report, present facts sufficient to enable the court, under the general prayer for relief, to hold this property described in those mortgages, as charged, and liable, under this equitable obligation to Smith, and will follow the property into the plaintiff's hands, as specifically bound.

*Barnes,* and *T. C. Perkins,* for William R. Smith and others.

ELLSWORTH, J. . The important question, presented in this case, is whether the two deeds of Andrew Coe to Henry D. Smith, of the 5th and 13th of December, 1854, are, or are not, fraudulent and void, as contrary to the provisions of the statute of 1853, for the relief of insolvent debtors. The plaintiffs insist that they are; that the deeds were made by an insolvent person, with a view to insolvency, and were not within the seventh section of the act, and particularly that they operate, by way of preference among creditors, and must, of course, be held to be void and of no effect. The defendants, on the other hand, insist that mere insolvency, which is subsequently developed, does not make the deeds of the debtor fraudulent and void; and that, even if the deeds do not come within the exceptions in the seventh section, they are not bad, unless they were made with a view to insolvency. The question is one of more than ordinary interest, since it is important in itself, and this is the first time the court has been called upon to construe this statute.

We do not, however, hesitate as to the determination to which we should come.

Three things are necessary in order to make the deed of an insolvent debtor, fraudulent and void under the statute of 1853. 1. The grantor must be in failing circumstances; 2. the deed must be made with a view to insolvency; 3. the deed must be made with intent to prefer one creditor to another.

The words "failing circumstances," as used in the statute, mean more than actual insolvency, for that is consistent with an honest belief of the insolvent debtor, of his wealth and prosperity; the words would seem to imply that the insolvent is about failing, and closing his affairs, from an inability to continue in business, and to meet his payments; to hold that a debtor, honestly pursuing his business, believing he is solvent, or if embarrassed, hoping to extricate himself by continued efforts, and with that view, buying and selling in the usual course of business;—to hold such a person to be a bankrupt within this statute, and that all, who deal with him, deal with him at their peril, if it should turn out he was really insolvent at the time, would interrupt all business, and create great and general alarm. We construe the words of the statute in a more specific sense, to wit, the closing of business by an avowed and deliberate failure. So Judge Story construed the word bankrupt, under the bankrupt law of the United States, in *Arnold et al.* v. *Maynard,* 2 Sto. R., 358. He says, it describes one acting in contemplation of actually stopping his business, because he is insolvent, and utterly incapable of carrying it on.

But not to enlarge on this point, we pass to the second, which, in our view, is entirely decisive of the case. We mean the words, "in view of insolvency." What meaning shall we attach to these words? They appear to be very plain and pointed, and we can not doubt that they are important, and that they fully disclose the object which the legislature had in view, in the law. No debtor, actually failing, shall

be allowed to convey away his property, to make preferences among his creditors. Any such conveyance, made with a view to insolvency, is contrary to the statute, and is utterly void. This is what these words mean, and they mean no more. Actual insolvency is not enough, for this does not necessarily prove any particular view of the insolvent in an ordinary sale, or mortgage; his insolvency may have nothing at all to do with it, and be neither the cause nor the occasion of it. It is but a circumstance to be taken into the account in weighing motives, and although it may work a kind of preference, yet if this was not intended by the parties, if the *quo animo* was wanting, and the conveyance was *bona fide*, and in the usual course of business, the conveyance is not contrary to the language, or spirit, of the statute. It has been claimed that a conveyance to a *bona fide* grantee is liable to be declared void, if made by an insolvent, in view of his failure, and if it does not come within the cases, excepted in the seventh section of the act. This is a point, however, upon which it is unnecessary to express an opinion in this case.

What we have said is confirmed by decisions under the late bankrupt law of the United States, and the entire later decisions in England, under their bankrupt law. In *Janes* v. *Howland and al*, 8 Met., 377, the question arose under the late bankrupt law of the United States, which contains this clause: " all conveyances or transfers of property in contemplation of bankruptcy, and for the purpose of giving any creditor, &c., any preference, or priority, &c., shall be deemed utterly void, and a fraud upon this act;" the court held, that if a party who fears, or believes, himself insolvent, but does not contemplate stoppage or failure, and intends to keep on, and make his payments, and transact his business, hoping that his affairs may be thereafter retrieved, and in that state of mind makes a sale or payment, without intending to give a preference, and as a measure connected with going on with

his business, and not as a measure preparatory to, or con-
nected with, a stoppage in business, such sale or payment is
not void, as made in contemplation of bankruptcy, within the
meaning of the bankrupt act of the United States.   Hub-
bard, J., in giving the opinion of the court, after reviewing
the cases, says, " in view of all the authorities, we hold the
law to be this, that though insolvency in fact exists, yet if the
debtor honestly believes he shall be able to go on in his busi-
ness, and with such belief pays a just debt, without a design
to give a preference, such payment is not fraudulent, though
bankruptcy should afterward ensue.   And on the other hand,
if the debtor, being insolvent and knowing his situation, and
expecting to stop payment, shall then make a payment, or
give security to a creditor for a just debt, with a view to giv-
ing him a preference over the general creditors, such payment
or giving security, is fraudulent as against the creditors, and
property that is transferred in making such payment, or giv-
ing the security, may be recovered by his assignee.   The
whole rests upon the intent with which the act was done,
and the intent is to be proved, as a fact.   In *Tidgrove* v.
*Sharp*, 5 Taun., 541, Gibbs, Ch. J., says, " the cases in which
the doctrine of contemplation, in cases of bankruptcy, was
introduced, make it depend on the *quo animo*.   In *Morgan*
v. *Brundrett*, 5 Bar. and Ald., 289, Patterson, J., says, " a
man may be insolvent, but yet not contemplate bankruptcy; "
and Parks, J., says, " the meaning of the words, ' in contem-
plation of bankruptcy,' I take to be, that the payment, or
delivery, must be with intent to prevent the general distribu-
tion of effects which takes place under a commission of bank-
ruptcy."   From the English cases, which are all collected
and commented upon by Hubbard, J., we derive this rule,
and we think it is the true one, that the *quo animo* is the
important and decisive characteristic.   In the matter of
Alonzo Pearce, in the district court of the district of Ver-
mont, reported in 6 Law Rep., 261, Prentiss, J., says, in
speaking of a conveyance by a bankrupt, " I think it must

Utley and another *v.* Smith and others.

appear, that the debtor, in making the transfer, though he did it voluntarily, and while in fact insolvent, acted in contemplation of bankruptcy, *i. e.,* in anticipation of breaking, or failing, in his business, of committing an act of bankruptcy, or of being declared a bankrupt, on his own instance, on the ground of inability to pay his debts, and intending to defeat the general distribution of effects which takes place under a proceeding in bankruptcy."

It was contended by the plaintiffs, that a man must be supposed to know the state of his affairs, and to have acted with reference to his insolvency, however really ignorant of the fact, if subsequent developments make it manifest, that, at the time, he was in fact insolvent.   Hence it is said, that when Coe mortgaged his property to Smith, he did it in view of his insolvency and failure, and with intent to prefer Smith to his other creditors, or, at least, that this must be held to be true, however untrue in fact.   We cannot give an assent to this course of reasoning.   The committee expressly find that the parties had no knowledge or belief of the insolvency of Coe, and that his deeds to Smith were *bona fide*, and not made in view of failing and stopping, but with a view to the continuance and extending of business, in a new partnership connection.   Were the intention of Coe otherwise, and not *bona fide*, as the committee find, but to prefer Smith above the general creditors, or if the question of intention were open for our review, and we were decided what the intention of the parties was, in forming a new company to carry on this business, we might possibly come to a different conclusion from the committee.   But we are not permitted to do this, although it was claimed, on the argument, that we could, and so we are concluded upon the question of *quo animo*, and therefore can not, as matter of law, against the finding, pronounce the deeds to be void as a fraud on the insolvent law of this state.

The third thing, which will make void the deed, or assignment, of an insolvent debtor, wherever it is found, is the

intent of the grantor, or assignor, to make a preference among creditors, and prevent an equal distribution of assets. This is too clear to admit of any question whatever. Equality among creditors is the great thing aimed at by the legislature; not to interfere with sales and payments in the ordinary course of business, nor to prevent debtors from paying, or securing, their creditors, with a view of continuing business. Now we look in vain for any such purpose, or intent, accompanying the mortgages of Coe to Smith, and hence those instruments are not void in view of the statute.

It was said, on the argument, that those deeds are fraudulent and void, under our general law of fraudulent conveyances, for the want of possession, taken by the mortgagee. Assuming, as we must, under the finding of the committee, that the mortgages were *bona fide*, and free from the objections already commented upon; that there was no covert design in forming the company of Smith, Coe & Co., and that the company took possession of the property, and with the avails of it paid company debts, and assumed company liabilities, we do not see any force in the objection to their fairness and validity. The fact of Coe's being a member of the new company, can not make any difference, since he could, and did, part with his possession, to them, and has given the creditors of the company a good and valid lien on the property for their debts. There was no possession left in Coe, upon which to raise a presumption of fraud, under the general statute of fraudulent conveyances.

Another claim made is, that the deeds are void under our registry act, because the debts are not well described in the condition of the deeds. Were this an original question, it would be difficult, we think, to sustain the deeds against this objection, but it is not; and although our early decisions would hold them void, for vagueness, our decisions for the last ten and fifteen years, have gone further, and established the law to be liberal enough to sustain mortgages, quite as indefinite and vague as the present. Of course

Utley and another *v.* Smith and others.

debts, not paid, or assumed, before the general assignment of Coe, would not be secured; nor any debts exceeding the sum stated in the condition.

From the report, it appears, that William R. Smith, who was a partner in the company of Smith, Coe & Co., received, as such, from the personal estate conveyed to the company, fifty-six hundred and forty dollars, seven cents. The company had a good title to this property, if the views already expressed are to be considered as correct, and hence, William R. Smith is liable to account for it as a partner, only for the benefit of the creditors of Smith, Coe & Co. Upon the foregoing premises, it is agreed, that he is entitled to charge that fund with twenty-nine hundred and three dollars, seven cents, and we think he may charge the further sum of twenty-two hundred and seventy-eight dollars, forty cents, for company debts paid, and four hundred dollars for his services, and may retain company property, or effects, to the amount of one hundred and fifty-eight dollars more, for company debts yet unpaid.

We advise that the accounts be settled on these principles.

Other questions have been made, and argued at much length, which we pass over, as not material to the final disposition of the case.

In this opinion, the other judges, STORRS and HINMAN, concurred.