SAMUEL HAMILTON, TRUSTEE, vs. GEORGE M. STAPLES.

*P*, who was indebted in a considerable amount both on his private account and as partner with *S*, conveyed to *S* all his real estate to secure an indebtedness to him and sold him a quantity of personal property for cash, and soon after removed to the state of Alabama, with the money and all his remaining property.  *S* knew of his indebtedness, and of his intention to leave the state without paying his debts, and that no property would be left by him in the state.   *P* was not however insolvent.   The intention of *S* in buying the personal property was to secure a settlement with him and to furnish him with money to set up business in Alabama.   On a bill in equity brought by a trustee of the insolvent estate of *P*, appointed in this state, against *S*, to set aside the conveyance of the real estate, and to compel him to account for the personal property, it was held—1. That the conveyance and sale were not to be regarded as fraudulent as against the partnership creditors, because *S* remained personally liable for the partnership debts and the property could be attached by the partnership creditors as well as before.   2. That they were not void as against the private creditors of *P*, under the insolvent act of 1853, because not made in failing circumstances and in view of insolvency.   3. That they were not void under the statute against fraudulent conveyances, because it did not appear that, if a fraudulent intent existed, *S* had knowledge of it.    ·

BILL IN EQUITY, brought by the petitioner as trustee of the insolvent estate of Royal P. Pratt, to set aside a conveyance

of real and personal property made by the insolvent to the respondent and which was claimed to be void against the creditors of the insolvent; brought to the superior court in Hartford county, and referred to a committee by whom the following facts were found.

Pratt and the respondent Staples, who was his father-in-law, in November, 1855, entered into a co-partnership under the name of Staples & Pratt, and thereupon immediately commenced business as such co-partners. Their original business was blacksmithing ; but about the 1st of January, 1856, they added to this the manufacture and sale of carriages and wagons, together with the repairing of them. They continued this business until the first of January 1863, when the partnership was dissolved, and Staples retired, taking the horseshoeing department of the company business, and continuing that by himself, and leaving all the rest of the business to Pratt, who from that date continued to carry on and manage the same alone and in his individual name, until near or into the month of December, 1865. The business of the partnership had become quite large at the time of its dissolution. No entire settlement and liquidation of its affairs has ever been made, but a partial settlement was made between the partners, some time between the 19th and the 22d of December, 1865, by which their firm affairs were closed as between themselves, saving any outstanding debts to or from the concern to or from others. Pratt was then about to remove to Alabama, and from that time Staples had the books of the concern in his possession. There appears to have been only one debt due from the firm at the time of the settlement. This was an account in favor of Charles Seymour of Hartford, part of it dating back as far as 1856, and without interest amounting to something over $1,600, and with interest to between $2,000 and $2,100. On this account nothing had been paid by Staples or Pratt for a long time. In the latter part of the summer of 1865 Pratt conceived the idea of breaking up his business in Hartford and establishing a carriage business at Prattsville, Alabama, and removing thither with

his family. About the 10th of August, 1865, he accordingly sold his manufacturing buildings and the land on which they stood in Hartford, and some time in October following visited and returned from Prattsville, and thereupon immediately began the shipping of tools, machines, stock on hand and purchases suitable and intended for the establishing a carriage business at Prattsville, and prepared to remove himself and his family to that place. This design and these movements of Pratt were all open and to some extent generally known in Hartford, and the fact that he was shipping more or less property to Alabama was known to Seymour, his principal creditor. At the time of his settlement with Staples Pratt was indebted to Seymour to the amount of about $3,600 on his own individual account, besides the account due from Staples & Pratt. Pratt owed besides some few other debts, but not to a large amount.

By their settlement in December, 1865, Staples and Pratt made due to Staples from Pratt $4,317.69, without considering the interest. At this time Pratt owned five carriages worth from $1,200 to $1,600, and a house and lot in Hartford. The house and lot were worth $8,000 and were subject to a mortgage for $3,500 to the Society for Savings in Hartford. By the settlement it was agreed that Pratt should convey the house and lot to Staples, subject to the mortgage, in payment of the balance of $4,317.69 due him, and that Staples should take the carriages of Pratt at $1,600 and pay him the cash therefor. On or about the 22d of December, 1865, this arrangement was carried into effect. The carriages were conveyed by Pratt to Staples, who paid him therefor $1,600, and at the same time Pratt by a quit-claim deed, dated Dec. 22, 1865, conveyed the house and lot to Staples, which deed was duly recorded. These house and carriage contracts were not made separately, without reference to one another, but were inducements one to the other. Pratt had sufficient property to pay all his debts both at and after his conveyances to Staples. After these conveyances were made, however, he had very little visible property in Connecticut. Nearly all his property beyond the real estate and carriages

he had sent off to Alabama, or turned into money to take there. There was nothing besides except a few moveables, worth perhaps $250, and some notes and book accounts, the whole entirely insufficient to pay either the debt of Staples & Pratt or of Pratt alone to Seymour, and, with the money he had, insufficient to pay the whole of Pratt's individual indebtedness.

When Pratt made and completed his settlement with Staples he did it with the purpose of leaving this state, and taking away all the property he could without paying Seymour, either then or at any early day, and he carried out this purpose on the first day of January, 1866, going off suddenly with his family, leaving behind only the few claims and moveables above mentioned. His object in this was to keep as much of his funds as he could to carry on his business in Alabama. When Staples made the settlement with Pratt he knew of the debt due Seymour from Staples & Pratt and that it was unpaid. He made the carriage purchase in order to secure the settlement of the partnership account between him and Pratt, and the conveyance of the house and lot to secure payment of the balance due him. He knew that scarcely any visible property would be left to Pratt in Connecticut when these conveyances were completed and desired to aid him to an increase of funds to take away. He supposed that Pratt intended to leave Connecticut without paying Seymour or making any suitable provision for such payment. He had also shortly before understood that Pratt was individually indebted to Seymour, although he did not know the particulars or amount of the debt, and when he settled with Pratt as above he had no information that this debt was paid, as in fact it was not.

Hamilton, the petitioner, was, on the 22d day of January, 1866, and within sixty days after the conveyances to Staples, appointed by the court of probate for the district of Hartford, upon the the petition of Seymour the creditor, a trustee to take charge of the property of Pratt under the insolvent law of the state, and gave bonds according to law and accepted the trust.

Upon these facts the case was reserved for the advice of this court.

*T. C. Perkins* and *Stanton*, for the petitioner.

*First.* The conveyances are fraudulent under our statute against fraudulent conveyances. Gen. Statutes, p. 480, secs. 1, 2.

1. The question of fraud is a question of law upon admitted facts. *Beers* v. *Botsford*, 13 Conn., 146 ; *Pettibone* v. *Stevens*, 15 id., 19, 26 ; *Story* v. *Norwich & Worcester R. R. Co.*, 24 id., 94.

2. The finding is that "Pratt made the settlement with the purpose of leaving this state and taking away all the property he could without paying Seymour then or at any early day." His purpose was to keep as much of his funds as he could to carry on his business in Alabama. Staples knew this, and desired to aid him to an increase of funds to take away. He knew of these unpaid debts. He knew that Pratt was going away without paying Seymour or making any suitable provision for such payment. He knew that no property would be left here to pay his debts. We say that this finding shows an attempt of these men to avoid the debts due from Pratt to Seymour. Our statute is copied in substance from the act of 13th Elizabeth, and our courts have adopted the construction of the English courts. 1 Swift Dig., 266 ; Act 13 Eliz., chap. 5.

3. A conveyance made by Pratt to hinder and delay Seymour from collecting his debt is a conveyance made to avoid a debt. As Staples knew that Pratt did not intend to pay Seymour, or make provision therefor, and designed to aid him to an increase of funds to take away, he participated in the design to avoid a debt. A conveyance to hinder and delay a creditor is fraudulent. *Gaylord* v. *Couch*, 5 Day, 223 ; *Pettibone* v. *Stevens*, 15 Conn., 19. A conveyance is void where there is the intent to place the property beyond the reach of a creditor. 1 Swift Dig., 276 ; *Demeritt* v. *Miles*, 2 Foster, 523 ; *Ashmead* v. *Hean*, 13 Penn. S. R., 584 ; *Anderson* v. *Hooks*, 9 Ala., 704.

4. When the debtor can pay in full, but carries property out of the jurisdiction, the transaction is fraudulent. *Stewart* v. *Spenser*, 1 Curtis C. C., 157. In this case Pratt disposed of all his property, by removing part of it out of the state, and by placing the rest in the hands of his father-in-law, and left at least $3,600 of indebtedness unprovided for. We say, in respect to the carriages, that Staples had no right to purchase them under these circumstances. 1 Swift Dig., 266 *et seq.*

*Second.* The conveyances were made by Pratt when in failing circumstances, in view of insolvency, and with the intent to prefer Staples.

1. The finding does not deny that Pratt was insolvent as against creditors in this jurisdiction. The purpose and effect of the conveyances were to defeat the just distribution of his property under our statutes. He was stopping his business and payments and removing his property. Gen. Statutes, p. 422, sec. 87 ; p. 426, sec. 97.

2. The case of *Utley* v. *Smith*, 24 Conn., 290, was of a debtor who was ignorant of his insolvency, and made a *bona fide* mortgage. He fully expected to continue his business in this state and make his payments. In this case the business was stopped, payment was stopped, every particle of property put beyond the reach of the creditors in this state, and no provision made to pay those creditors. The debts amounted to about $6,000, and a few nearly worthless bills and accounts were left behind to pay this large sum.

3. Pratt's private debt to Seymour was about $3,600. He pays Staples over $4,000 in real estate, sells to him $1,600 worth of carriages, and goes off suddenly, leaving behind only a few worthless bills. Staples knew of these debts, and that they were unpaid. He knew that when these conveyances were completed the last vestige of Pratt's property would be swept away from the reach of his creditors. He also knew that Pratt intended to leave his debts unpaid. We say that a party who makes a conveyance under these circumstances does it in view of insolvency, within the meaning of our statutes. *Utley* v. *Smith*, 24 Conn., 312, and cases there cited.

4. " Insolvency means, not an absolute inability to pay one's debts at some future time upon a settlement and winding up of his affairs, but a present inability to pay in the ordinary course of business, as persons carrying on trade usually do." *Thompson* v. *Thompson*, 4 Cush., 127. See also *Lee* v. *Kilburn*, 3 Gray, 595, and cases there cited. Under our statute a debtor is insolvent when a debt of $100 can not be secured by an attachment of his property. Gen. Statutes, p. 424, sec. 90. And he contemplates insolvency when he designs to dispose of his property so that a debt can not be thus secured. Our statute regarding the insolvent estates of non-resident debtors confirms the petitioner's claim upon this point. Gen. Statutes, p. 425, sec. 92. This statute was passed in order to prevent preferences from being made in this way. *Claflin* v. *Beach*, 4 Met. 392. The parties are presumed to know that the property of a non-resident can be distributed as insolvent estate and to have made their conveyances with regard to this fact.

5. As to the intent, it is found that " Pratt's purpose was not to pay, &c.," and that Staples knew this. The intent will be inferred from the acts done. Where the effect of an act understandingly done is necessarily injurious to the rights of another, the *quo animo* is not a matter of fact but an inference of law. *Coleman* v. *Wolcott*, 1 Conn., 284, 294.

6. If Pratt was not insolvent, but could have paid in full, and removed all his property to Alabama, (except that conveyed to Staples,) and avoided his debt, then he committed a fraud. But Staples knew of his purpose and aided him in it. On the other hand, if Pratt was insolvent, then he made the conveyances while in failing circumstances, with intent to prefer creditors, and Staples knew that he was obtaining a preference and covering up Pratt's property.

*Hyde* and *Jones*, for the respondent.

PARK, J. It is difficult to see how the conveyances from Pratt to Staples, or either of them, could be fraudulent, so

far as the partnership debt to Seymour is concerned.   Staples was jointly liable with Pratt for the debt.   The firm could be sued at any time and the amount of the debt collected out of the estate of Staples.   The property conveyed was as much liable to attachment to secure the claim after the conveyances were made as before.   So far as that debt is concerned, therefore, there is no ground to claim that the conveyances were fraudulent.

But it appears that Pratt was individually indebted to Seymour to a large amount when the conveyances were made, and the question is whether, upon the facts found, the conveyances were void in relation to that debt.

It is clear that the case does not come within the statute of 1853, in regard to the settlement of estates of insolvent debtors, for Pratt was not in failing circumstances when the conveyances were made, nor were they made with a view to insolvency.   The committee has not found either of these facts, and both of them are essential to bring the case within that statute.   *Utley* v. *Smith*, 24 Conn., 290.

Does the case come within the first section of the act against fraudulent conveyances?   Gen. Statutes, tit. 26, p. 480.

It may well be questioned whether the allegations in the petition are sufficient to bring the case within the provisions of that statute, even if the facts found by the committee are sufficient for the purpose.   The allegations are "that Pratt did not owe Staples, but that said conveyances, assignments, transfers, and sales were made without consideration, and while said Pratt was in failing circumstances, with a view to insolvency, and with intent to prefer said Staples over the creditors of said Pratt, with the knowledge on the part of Staples that said conveyances were so made."   The petition is adapted to the statute of 1853, which we have considered, and it would seem that the pleader had no other statute in view while drafting the petition.   But however this may be, we are satisfied that the facts found by the committee fall short of showing what is essential to be found in order to contravene the provisions of the statute against fraudulent conveyances.

Pratt was not insolvent when the conveyances were made. He had property sufficient to pay all his creditors, although the most of it had been removed to the state of Alabama.

Now if, under such circumstances, Pratt could have had an unlawful intent to avoid his obligations to Seymour, still it was necessary that Staples should participate in the fraud, and by his concurrence seek to promote it, in order to render the conveyances void against Seymour. *Utley* v. *Smith*, 24 Conn., 290; *Harvey* v. *Mix*, id. 406; *Partelo* v. *Harris*, 26 id. 480; *Sisson* v. *Roath*, 30 id. 15; *Foster* v. *Hall*, 12 Pick., 99. From the finding of the committee it appears, that so far from aiding Pratt in the commission of fraud, it is expressly found that Staples received the conveyances in order to secure the settlement of his partnership account with Pratt, and to obtain payment of the balance due him. This seems to exonerate him from all participation in the fraud, if any was attempted to be perpetrated on the part of Pratt. Staples was a creditor of Pratt as well as Seymour. He was entitled to receive payment of his demand as well as Seymour. He had a right to take all lawful measures in order to obtain satisfaction of his claim. But it is said that he paid a large sum of money on the carriage contract when he had been informed that Pratt was individually indebted to Seymour, and although he did not know the amount of the claim, or whether it had been satisfied or not, still the information was sufficient to taint the transaction with fraud, taken in connection with the further fact that he knew that scarce any visible property would be left to Pratt in Connecticut, although he knew that Pratt had property sufficient in Alabama to satisfy Seymour's demand. These facts were proper subjects of consideration by the committee in determining with what intent Staples received the conveyances. The most that can be said of them is, that they are evidence tending to show fraud to some extent, and no doubt they had their proper and legitimate effect upon the mind of the committee when he found that the object of Staples was to obtain satisfaction of his demand against Pratt. We cannot review the finding of the committee upon this subject. It is conclusive upon us; and has been so held in

numerous decisions. *Goodman* v. *Jones,* 26 Conn., 264; *Graves* v. *Lockwood,* 30 id., 276.

What is found, in relation to the supposition of Staples, that Pratt intended to leave Connecticut without paying Seymour, is stated in reference to the partnership debt, which we have considered.

We advise the superior court to dismiss the petition.

In this opinion the other Judges concurred.